# Richmond

ALICE STAPLES BIBBY v. JENNIE B. THOMAS, ET ALS.

November 14, 1935.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Browning and Eggleston, JJ.

The opinion states the case.

*W. H. Carter* and *Paul H. Coleman,* for the appellant.

*William Kinckle Allen* and *Thomas Whitehead,* for the appellees.

HUDGINS, J., delivered the opinion of the court.

This suit was instituted to set aside a deed from Alice Staples Bibby to Jennie B. Thomas; and from a decree dismissing the bill, this appeal was allowed.

Both grantor and grantee are negro women who live in the town of Amherst. In October, 1933, while suffering from a severe attack of lumbago and sciatica, Alice Bibby sent for Jennie Thomas, a niece of a deceased husband, to nurse her. Jennie Thomas remained in Alice Bibby's home for about three months, nursing and keeping house for her. On November 9 she informed W. K. Allen, an attorney, that Alice Bibby wanted him to come to her home to prepare a legal document. About eleven o'clock of that day Mr. Allen went to the Bibby home, and found his client in bed. He testified that she told him she wanted to convey her house and lot, and all her personal property to Jennie B. Thomas. He made a memorandum of the property, returned to his office, prepared a deed and about 3 p. m. returned to the Bibby home, accompanied by a notary. The deed was read to Alice Bibby, who called attention to the fact that a piano was not included in the conveyance; this was added by interlineation. After this correction the grantor seemed satisfied, the notary wrote her name, she touched the pen, acknowledged the signature as hers, the notary affixed his jurat to the deed, and the completed instrument was then given to the grantor. On the next day Jennie Thomas, the grantee, presented the deed in the clerk's office, and it was duly admitted to record.

Mr. Allen, the notary and Jennie Thomas, testified that the act each performed in the above narrative was performed at the specific request of Alice Bibby, who ap-

peared to them normal, and to thoroughly understand the nature and purpose of the transaction. Appellant contends that the deed was executed without consideration, and was the result of undue influence exerted, by Jennie Thomas, on the grantor.

The record discloses that on the date of the deed, Alice Bibby was a very old, infirm, illiterate and ignorant colored woman, (Jennie Thomas stated she was as old as her mother who was then more than ninety years of age), whose property consisted of two lots on which there stood a substantial five or six-room dwelling, used by her as a home, with a market value of some $1,200. The home was well furnished. Dr. Ware, her regular physician, stated that "mighty few white people have houses furnished any better." However the value of the furniture is not shown by the record. The deed conveyed all the real property, and all the personal property owned by the grantor, for the alleged consideration of $100, stated to be due by the grantor to the grantee, and love and affection.

The grantee is no blood relation to the grantor, and was employed to look after the grantor while she was sick. The attending physician, Dr. Ware, testified that he had prescribed morphine for Alice Bibby to relieve her of the excruciating pain she was then suffering. That he did not see her on November 9, but on November 3, he gave her two tablets of morphine and wrote a prescription for fifteen more. Again on November 6 he gave her two tablets, and a prescription for twenty additional tablets, and instructed Jennie Thomas to reduce the doses. These prescriptions were filled by the druggist and on November 13, when the doctor again visited Alice Bibby, he found that all the tablets had been used, so within ten days the grantor had taken thirty-nine one-fourth grain tablets of morphine, or an average of nearly one grain per day. The doctor further stated that he had prescribed, and it was necessary for the patient to take, morphine daily; that six or eight hours after taking a dose, she would be in a comatose state, and would appear to anybody, not

familiar with her condition, to be dying; that while the drug was dying out she would become excited, and sometimes wild; that for twenty-four hours after taking morphine, the patient would not understand or realize what she was doing.

During Alice Bibby's sickness Jennie Thomas was the only person living in the house with her, and the only person except the doctor, who was charged with the duty of administering the drug. She testified that although she had gotten morphine tablets from the drug store on November 3 and 6, she had not given Alice Bibby any morphine from 4 a. m. on November 8, until after the deed was executed, on the afternoon of November 9.

Both the white and colored neighbors of Alice Bibby frequently visited her during her sickness. One of these, Miss Ida Edwards, testified that on the night of November 8 she saw Alice Bibby, thought she was dying, and instructed Jennie to call her if Aunt Alice needed anything. In view of Dr. Ware's testimony, it would seem that Alice Bibby had taken a dose of morphine within a few hours before Miss Edwards saw her, which is a direct contradiction of Jennie Thomas's evidence on the subject.

When Jennie Thomas was cross-examined about the large quantity of morphine which she had obtained for Alice Bibby, she denied having given it to her, but stated that she couldn't stay in the room with Alice all the time, that she had to go to market, and perform other household duties. All of this is doubtless true, but that does not excuse her from leaving the morphine tablets in a place easily accessible to the patient. While there is no direct evidence that Alice Bibby was under the influence of morphine at the time she executed the deed, the act is not that of a normal person.

Jennie Thomas doesn't claim that the consideration is adequate, indeed she practically admits that she gave no valuable consideration for the transfer of the property. She stated that Alice Bibby told her she was going to give her the sum of $100, because several years before the

deed was executed, she had stayed with Alice for a month while Alice's first husband was confined to his bed in his last sickness; that when Alice Bibby's second husband died, she stayed with her two months; and that she had made no charge for these three months that she had lived in the home. Hence, according to her own statements, the grantor was under no legal obligation to pay the $100 mentioned in the deed, or any other sum. Her testimony is indefinite and rambling, in one breath she states she was given the property because she had an afflicted child, in another she says she was given the property because Alice Bibby wanted her to have a home, and she had taken such good care of the two husbands just prior to their death.

Alice Bibby testified, and it's not denied by appellee, that she owed Jennie Thomas nothing; that she had given Jennie Thomas ten dollars in money, one half barrel of flour, 100 pounds of sugar, all the canned fruit in the house, a corduroy suit, a black georgette dress, and a parlor suite of furniture, in payment for all services rendered. Within three weeks from the time that Jennie Thomas has undertaken to nurse and protect this sick old woman, who was comparatively well fixed, she had stripped her patient of every dollar's worth of property that the old woman owned, and caused it to be transferred to herself, to whom Alice Bibby was under no obligation, moral or legal, to provide.

We have: (1) An old woman whose reason was temporarily impaired, if not entirely dethroned for several months, by intense suffering and the use of drugs, as the grantor in a deed which conveys all the property, both real and personal, owned by her. (2) The consideration named is grossly inadequate, and the meritorious consideration attempted to be proven is uncertain, vague and indefinite. (3) The grantee is one who has no legal or moral claim upon the grantor, and procured the execution of the deed at a time when the grantor was under her exclusive care and protection. (4) That as soon as the

grantor recovered from the temporary sickness, she demanded that the property be returned to her on the ground that the conveyance was made without consideration, and at a time when her mental faculties were seriously impaired.

To hold this deed valid will render the grantor a pauper for the remainder of her life. To set it aside will deprive the grantee of nothing previously owned by her; as the record clearly discloses she has been amply repaid for the services she rendered the grantor. Mr. Justice Story, in *Harding* v. *Wheaton,* Fed. Cas. No. 6,051, 2 Mason 378, said, "Extreme weakness will raise an almost necessary presumption of imposition, even when it stops short of legal incapacity; and though a contract in the ordinary course of things reasonably made with such a person might be admitted to stand, yet if it should appear to be of such a nature, as that such a person could not be capable of measuring its extent or importance, its reasonableness, or its value, fully and fairly, it cannot be that the law is so much at variance with common sense, as to uphold it." Judge Lewis, in *Fishburne and Wife* v. *Ferguson's Heirs,* 84 Va. 87, 110, 4 S. E. 575, 581, after quoting the above, said: "It was accordingly declared to be settled law that whenever there is great weakness of mind in a person executing a conveyance of land, arising from age, sickness, or any other cause, though not amounting to absolute disqualification, and the consideration given for the property is grossly inadequate, a court of equity will upon proper and seasonable application of the injured party, or his representatives or heirs, interfere and set the conveyance aside, since from these circumstances, imposition or undue influence will be inferred."

These principles are decisive of the case under review. It follows that the decree from which the appeal was taken must be reversed, and a final decree will be here entered restoring title to the property to appellant.

*Reversed and final decree.*