## CIRCUIT COURT OF THE CITY OF NORFOLK

Lydia M. Gornto

v.

Elmer L. Spry et al., etc.

April 29, 1977

Case No. (Chancery) C-75-1386

By JUDGE THOMAS R. McNAMARA

Complainant at 81 years of age, infirm and dependent, though not legally incapacitated, conveyed to defendants her residence, the only property she owned, in consideration of their agreement to allow her to live there until such time as she should become bedridden. Her deed of April 27, 1972, purports to be a deed of gift, reciting consideration of mutual love and affection. In it the parties' agreement was evidenced by her reservation of the "right to live on the said premises for the rest of her natural life, provided she is not bedridden." By subsequent deed dated June 3, 1972, also a deed of gift reciting consideration of mutual love and affection, she released her aforesaid reservation and was given a collateral agreement by which defendants gave her the right "to live in their home."

Having gained this position of superiority, defendants then became belligerent toward her and imposed such restrictions on her access to food, furnishings and utilities that she was ultimately forced to leave. The evidence indicated that defendants did not consider that their obligation to her included the provision of any services, attention or comfort and they acted accordingly.

Complainant now seeks to regain her home where defendants now continue to reside claiming ownership under the aforesaid deeds.

The Court rules that both deeds, being considered as parts of a single transaction, shall be set aside under the principles approved in *Bibby* v. *Thomas*, 165 Va. 248 (1935); *Fishburne* v. *Ferguson*, 84 Va. 87 (1887); *Lohman* v. *Sherwood*, 181 Va. 594 (1943); *Cook* v. *Hayden*, 183 Va. 203 (1944); and *Switzer* v. *Switzer*, 67 Va. (26 Gratt.) 574 (1875).

There was no consideration for the conveyances. While there might not have been "great" weakness of mind in respect to complainant's ability to comprehend, there was weakness and clearly great weakness in her ability to use her mind for her own protection. She was under the controlling influence of others "whose relations toward her were such as to enable them to exercise domination" over her. See *Fishburne* v. *Ferguson*, 84 Va. 87, p. 108.

Under these circumstances and all the evidence in the case "a court of equity will . . . interfere and set the conveyances aside, since from these circumstances, imposition or undue influence *will be inferred.*" *Bibby* v. *Thomas*, 165 Va. 248, 253.

In Virginia it has been stated that "when a person has been induced to part with a thing of value for little or no consideration, chancery will seize upon the slightest circumstances of oppression, fraud or duress for the purpose of administering justice in the case at hand." *Texas Co.* v *Northup*, 154 Va. 428, 442 (1930). But here the Court does not feel that the evidence discloses mere "slight circumstances" of oppression. In addition to the foregoing there appears to be a clear element of deception in the defendants' undertaking. A promise to let the complainant "live in" their house necessarily involves to some extent services or attention. As stated in respect to the phrase "to live in my family" employed in a contract with a mother-in-law, "she is not to be fed as a brute, nor to be sheltered as a horse, simply. She is entitled to decent physical comforts, and these it will be admitted, are implied in every such contract." *Rutan* v. *Crawford*, (N.J. Eq.) 16 A. 180, 183.